Joseph H. McCormack *vs.* John Butland & others.

Suffolk.     November 21, 1905. — April 16, 1906.

Present: Knowlton, C. J., Morton, Hammond, Loring, & Sheldon, JJ.

*Mechanic's Lien.     Practice, Civil,* Verdict.     *Pleading, Civil,* Variance.

If one contemplating the purchase of certain land and having agreed in writing with the owner of the land to build a house on it makes an oral contract with a mechanic to construct the cellar of the house, and the mechanic proceeds to dig the cellar with the knowledge and consent of the owner of the land, and if shortly thereafter the owner sells and conveys the land to the contemplating purchaser who employed the mechanic, and takes a mortgage back, the mechanic can maintain a petition under R. L. c. 197, to enforce a lien upon the property for the labor and materials furnished by him in constructing the cellar which will be good against the mortgage.

At the trial of a petition under R. L. c. 197, to enforce a mechanic's lien, if the judge submits to the jury a number of issues relating to the facts of the case, and the answers of the jury upon some of the issues indicate clearly what their answer upon another issue must have been, the judge may direct the answer upon this other issue, although were it not for the answers already given it would be a question of fact for the jury, this action of the judge being merely the withdrawal from the jury of an issue which has become immaterial by reason of the verdict given.

The objection of a variance between an allegation in the pleadings and a finding of fact agreed upon by the parties which was not taken at the trial cannot be raised after the case is reported to this court.

Petition under R. L. c. 197, filed in the Dorchester District Court on April 21, 1903, to enforce a mechanic's lien for labor performed and materials furnished in building a cellar on land in Dorchester.

Elizabeth Butland was alleged to be the owner of the prem-
ises at the time when the petitioner made the contract under
which the work was done, and, she having died, her heirs were
named as respondents. The respondent Blackwell was sum-
moned in as mortgagee and appeared and answered.

On appeal to the Superior Court the case was tried before
*Bell,* J. The question tried was whether the lien was estab-
lished as against Blackwell. There was no contention that the
certificate was not seasonably filed in the registry of deeds or
that the petition was not seasonably filed.

Eleven issues were framed, which are printed on page 428.

The record title to the property before the work was begun
and the materials were furnished stood in the name of Henry B.
Blackwell. On January 14, 1903, a deed was put on record con-
veying the property to Elizabeth Butland. This deed was dated
January 1, 1903, and was acknowledged on January 14, 1903.

On January 14, 1903, a mortgage deed was put on record from
Elizabeth Butland to Henry B. Blackwell giving Blackwell a
mortgage for $4,000, payable in five years, with interest at five
per cent per annum. This deed was dated January 1, 1903,
and acknowledged on January 5, 1903.

There was also a contract made between Blackwell and the
Butlands dated January 1, 1903, which is printed on pages 429,
430.

The other evidence was in substance as follows:

The petitioner testified in substance that on January 2, 1903,
the respondent John Butland called on him, and requested that he
furnish him with an estimate of the cost of building a cellar upon
certain land in Dorchester; that thereupon they went upon the
land in question, and while there Butland informed the peti-
tioner that he was not the owner of the land, but might own
it some day; that he had a contract in writing with Blackwell
to build a house upon the land; that Butland then took from
his pocket the contract dated January 1, 1903, and gave it to
the petitioner to read; that the contract was signed by both the
Butlands and Blackwell; that the petitioner and Butland then
made a verbal contract for the work and materials furnished,
for which the lien was claimed; that the petitioner began work
on the next day; that he saw Blackwell for the first time on

January 6, 1903, at Blackwell's home; that on January 6 the petitioner found a man upon the land in the employ of Blackwell engaged in cutting down trees, and stopped him; that he then went to Blackwell's house and informed Blackwell what he had done; "that he had stopped Blackwell's man from cutting trees, as Butland had given him the trees"; that Blackwell responded, "What right have you to stop my man from cutting down my trees, Butland does not own that land, and may never own it, he has a contract to build the work, and I have a good mind not to allow you to dig another shovelful of dirt there, and I want you to leave my house at once"; that the next morning Blackwell came to the place where the work was going on and told the petitioner that he wanted to apologize for what he had said to him the day before, adding: "It is a fine day, so push the work along, don't take away too much dirt, and do a first class job"; that Blackwell came upon the land almost every day and gave him directions about the work; that on January 11 or 12 Blackwell came on the land and said to the petitioner that "he wanted the house changed like a plan he gave Butland to give me," and gave the petitioner a sketch of a plan saying: "follow that"; that the petitioner continued to do the work according to this sketch or plan until about January 24 or 26, and that the work was nearly completed, when Blackwell came upon the land with another sketch or plan, and told the petitioner to change the work to conform to the sketch or plan which he then gave him; that the petitioner completed the work under the last sketch or plan, and that the petitioner ceased work on January 30, 1903.

The respondent Blackwell testified in substance that in January, 1903, he owned the land in question; that he wanted to sell the land to some one who would erect a house on it; that he would furnish part of the money for building the house, taking a mortgage as security; that he wanted the house to be of sufficient value to make it a good security for the mortgage; that he met Butland and Butland agreed to buy the land and erect a house on it; that Butland had no money, and it was agreed that Butland should take a deed of the land and give a mortgage of $4,000 the consideration of which was $1,500, the price of the land, and $2,500, which Blackwell was to advance

toward the construction of the house as the work progressed; that at Butland's request the transaction was made in his wife's name; that about January 4 or 5, 1903, he, Blackwell, drew the contract printed on pages 429, 430, a deed of the land from himself to Elizabeth Butland, and a mortgage back from Elizabeth Butland to himself; that he dated all the papers January 1 for convenience; that he gave the contract, the mortgage and the mortgage note to John Butland, the husband of Elizabeth, for him to obtain her signature to the papers; that a day or two afterward Butland returned the papers to him signed by Mrs. Butland; that he held the papers in abeyance until the plan of the house could be agreed upon, as he did not intend to complete the transaction until the plan was satisfactory; that he sent his man down to cut some trees and the petitioner came up to his house to see about it; that the petitioner said Butland had given him the trees, and Blackwell responded, "Butland don't own the land, and may never own it, and he has no right to the trees, and I forbid you from cutting any trees or doing any work on the land"; that he did not see the petitioner again until after the contract was completed; that several plans of a house were considered before one was selected, which consumed several days of time; that on January 14, everything being satisfactory, Butland and the respondent Blackwell went to the registry of deeds, that Butland then signed the contract, the mortgage and the mortgage note; that the respondent Blackwell then signed and acknowledged the deed, and signed the contract, and that the deed and the mortgage deed then were recorded together; that it was all one transaction; that Butland paid nothing for the land; that he, Blackwell, did not authorize Butland to make a contract with any one to work on the house, and that he did not know that McCormack had been employed, or that he had done any work until after January 14, 1903.

It appeared in evidence that John Butland died after the petition was filed.

The foregoing was all the material evidence in the case.

Upon the issues for the jury the parties agreed upon the answers to issues one and four, and the judge directed the answers to issues two, three and eleven before the verdict of

the jury and to issues nine and ten after the verdict. The issues numbered five, six, seven and eight were submitted to the jury and answered by them.

The issues with the answers to them were as follows:

1. Was Elizabeth Butland the owner of the land mentioned in the petition at the time she made the contract with the petitioner? " No." By agreement.

2. Did the respondent have a valid mortgage on said land, duly recorded prior to the date of contract which Butland had the right to make with the petitioner, under which the lien is claimed? " No." By order of the judge.

3. Did said Butland have sufficient title to said land, at the time she made said contract with the petitioner, to charge the land with a lien which will avail against said Blackwell mortgage? " Yes." By order of the judge.

4. Did the deed of said land from Blackwell to Butland, and the mortgage back from Butland to Blackwell, both dated January 1, 1903, constitute one transaction, so that the seisin of Butland was instantaneous? " Yes." By agreement.

5. Was there any contract made between the respondent Blackwell and Elizabeth Butland, by which said Butland contracted with Blackwell to do the work which the petitioner McCormack did? " Yes."

6. If so, on what day was such contract made, and when did it take effect? " Before January 2, 1903."

7. Was it with the consent of the respondent Blackwell as owner, or of any person rightfully acting for him as owner, shown by acts or declarations other than the contract of January 1, that the labor was performed and the materials were furnished as set out in the petition? " Yes."

8. If such consent was given, was it before or after January 14? " Before January 14, 1903."

9. What was the date of delivery of the deed and mortgage between Blackwell and Butland? " Before January 14, 1903." By order of the judge.

10. What was the date of contract between Butland and the petitioner? " January 2, 1903." By order of the judge.

11. Was the written contract of January 1, 1903, between Butland and Blackwell, as matter of law, a consent which

charged the land with a lien as against Blackwell, mortgagee? " Yes." By order of the judge.

The respondents requested the judge to rule that on all the evidence and findings, and on the whole record, the lien could not be established.

The respondent Blackwell requested the judge to rule that on all the evidence and findings, and on the whole record, the lien could not avail against the mortgage.

The judge refused to rule as requested, and ruled that the lien should be established, and that a sale should be decreed; and reported the case for determination by this court. If the rulings and refusals to rule and orders were correct, the lien was to be established; otherwise, the petition was to be dismissed as against Blackwell, or such other order was to be made as justice might require.

The contract between Blackwell and the Butlands mentioned in the foregoing statement was as follows:

"Boston, Mass., Jan. 1, 1903.

"Memorandum of agreement entered into by and between John Butland and Elizabeth Butland, his wife, in her right, of the city of Malden, County of Middlesex, and Commonwealth of Massachusetts, party of the first part, and Henry B. Blackwell, of the city of Boston, County of Suffolk, and Commonwealth of Massachusetts, party of the second part: Witnesses:

"That said party of first part hereby contracts to erect upon lot numbered five (5) on a plan of lots made by Briggs, surveyor, fronting on Neponset avenue, westerly side of same, said lot being forty-one feet front on said avenue, by about one hundred feet deep, containing 4000 square feet of land, and situated from 164 feet to 205 feet northerly of the line of Boutwell street, this day January 1, 1903, conveyed to said party of first part, by said party of second part — a house 26 feet front by 36 feet deep, complete according to a plan and specifications hereto attached, — said house to be of first class material and workmanship, with cemented cellar and set tubs, furnace, bath-room and water closet, etc., open plumbing, gas fixtures, and electric light — the whole to be complete and ready for occupancy by May, 1903; and free from liens, or possibility of liens, and insured for the sum

of four thousand dollars, according to plans and specifications as part of this agreement, being those of a house built for Mrs. A. L. Lincoln, by Eldridge, Mattapan, to which reference is made.

"And said party of second part hereby contracts and agrees to pay to said party of first part, the sum of twenty-five hundred dollars ($2500), as the house goes up, as follows: 1st. payment when building is boarded in and cellar complete . . . . $500.

"2d. payment when outside is complete and ready to plaster, chimney built and topped, and first coat of paint on . . . . $800.

"3d. payment when house is plastered and furnace in . . . $300.

"4th payment when standing finish is up and plumbing complete . . . . $400.

"5th payment when house is fully completed, paths made and graded, and all ready for occupancy, etc., connected with city sewer . . . . $500.

"Total . . . . $2500.

"The building when completed is to cost not less than $5000. It is to be set back from Neponset avenue parallel with the line of the adjoining buildings.

"When the house is completed the party of the first part agrees to change the note and mortgage, if desired to do so by party of second part, for two notes secured by first and second mortgages for sums preferred by party of second part, amounting together to $4000. — the first mortgage and note to be payable in five years from this date, and the second mortgage and note to be payable at three years from this date, both with interest until paid at five per cent., payable semi-annually."

"Witness our hands this first day of January A. D. 1903 in duplicate.

> "Elizabeth Butland,
> John Butland,
>     Party of first part.
> Henry B. Blackwell,
>     Party of second part."

*C. W. Cushing*, for the respondents, submitted a brief.

*W. P. Meehan*, for the petitioner.

HAMMOND, J. This is a petition to enforce a mechanic's lien. The question tried was whether the lien was established as

against the mortgage held by Blackwell, the former owner of the property.

The contract of January 1, 1903, between the Butlands and Blackwell, then the owner, authorized and required the former to erect a house upon the land. By implication from the contract, Blackwell authorized the Butlands to employ either directly or through sub-contractors the necessary workmen to erect the house, and the labor thus employed was performed by his consent within the intendment of the statute. *Hilton* v. *Merrill*, 106 Mass. 528. *McCue* v. *Whitwell*, 156 Mass. 205, and cases therein cited. The evidence as to when this contract took effect was conflicting, but the jury, in answer to the fifth and sixth questions, found that it was made and took effect before January 2, 1903. The jury, in answer to the seventh and eighth questions also found that before January 14, 1903, the consent of Blackwell or of some person rightly acting for him as owner was shown by acts and declarations other than the contract of January 1, 1903.

If therefore the contract between the petitioner and the Butlands for the work was made before January 14, 1903, the lien would hold against the fee, notwithstanding the subsequent conveyances which were delivered on that day. It became therefore important to ascertain when the petitioner made his contract; and the tenth question framed for the jury was as follows: " What was the date of the contract between Butland and the petitioner? " It does not clearly appear in the report whether this issue actually was submitted to them or not, but it does appear that after the verdict of the jury upon the fifth, sixth, seventh and eighth issues the judge directed them to answer the tenth by giving the date as January 2, 1903. It is now objected by the respondent that upon the evidence the tenth issue presented a question of fact upon which it was the province of the jury to pass. And this is undoubtedly true. But the answer is that so far as material to the case the jury in the verdict upon the four issues upon which they returned a verdict had indicated their view on the tenth issue. It is to be borne in mind that the evidence as to whether before January 14, the time when Blackwell's deed to Mrs. Butland and the mortgage back were delivered, Blackwell or any one acting for him as owner had any knowledge that

this work was being performed by the petitioner was conflicting, the petitioner testifying that Blackwell had such knowledge and Blackwell testifying to the contrary; and it was left to the jury to find where the truth lay. They found that before January 14, 1903, Blackwell had such knowledge. This by necessary implication showed that the jury found that the petitioner's contract was made and the work begun before January 14, 1903, or in other words that the jury believed the petitioner. When by their verdict so much had been made clear, it was plain that it was immaterial on what particular day of January before the fourteenth the contract was made. It was enough if it was made before the fourteenth. Moreover, in this proceeding it was within the power of the judge to withdraw from the consideration of the jury an issue which had become immaterial by reason of the verdict given; and the action of the judge in ordering the verdict may be regarded in substance as such a withdrawal. In any event the respondent was in no way harmed by the order.

Whatever errors, if any, there were in directing the answers to the other questions have become immaterial by reason of the verdict of the jury upon those decided by them.

The question of variance in the pleading * does not seem to have been raised at the trial, and we do not think it is open to the respondents on this report. The result is that the lien is established as against the mortgage and a sale decreed.

*So ordered.*

---

\* The variance relied on by the respondents was between the allegation in the petition, that Elizabeth Butland was the owner of the land when the petitioner made the contract under which the work was done, and the answer to the first issue, agreed upon by the parties, that Elizabeth Butland was not the owner of the land when she made the contract with the petitioner.